UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINNACLE FITNESS AND RECREATION MANAGEMENT, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE JERRY AND VICKIE MOYES FAMILY TRUST, an Arizona trust,<br><br>Defendant,<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:08-CV-1368-GPC-BGS<br><br>**ORDER**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PINNACLE'S MOTION FOR ATTORNEY FEES AND EXPENSES;**<br><br>**(2) DENYING THE TRUST'S MOTION TO RETAX COSTS**<br><br>**(ECF NOS. 322, 335)** |

## **INTRODUCTION**

Before the Court is Pinnacle's Motion for Attorneys' Fees and Expenses ("Fee Motion"). (ECF No. 322.) The Trust has filed a response to Pinnacle's Fee Motion, (ECF No. 343), and Pinnacle has filed a reply in support of its Fee Motion, (ECF No. 347). Pinnacle subsequently filed supplemental exhibits in support of its Fee Motion. (ECF No. 346.) The Trust filed a response to the supplemental exhibits, (ECF No.

350), and Pinnacle filed a reply in support of its supplemental exhibits, (ECF No. 351).

Also before the Court is the Trust's Motion to Retax on Pinnacle's Bill of Costs ("Motion to Retax"). (ECF No. 335.) Pinnacle has filed a response to the Trust's Motion to Retax, (ECF No. 342), and the Trust has filed a reply in support of its Motion to Retax, (ECF No. 345). In short, both the Fee Motion and the Motion to Retax have been fully briefed.

The Court finds both motions suitable for disposition without oral argument. *See* CivLR 7.1.d.1. Having considered the parties' submissions, the record in this matter, and the relevant law, and for the reasons that follow, the Court will **GRANT IN PART** and **DENY IN PART** Pinnacle's Fee Motion and **DENY** the Trust's Motion to Retax.

## **BACKGROUND**

After a ten-day trial, a jury returned verdicts in favor of Pinnacle on its claims for (1) Breach of Contract (Buy-Out), (2) Breach of Implied Covenant of Good Faith and Fair Dealing (Buy-Out), (3) Promissory Estoppel (Buy-Out), (4) Breach of Contract (Operating Agreement), (5) Breach of Implied Covenant of Good Faith and Fair Dealing (Operating Agreement), (6) Breach of Fiduciary Duty, (7) Fraud (by Intentional Misrepresentation and by Concealment), (8) Constructive Fraud, and (9) Civil Conspiracy to Defraud.

The jury awarded Pinnacle $1,632,495.72 in compensatory damages on its first, second, and/or third claims ("Buy-Out Claims"). The jury awarded Pinnacle zero damages on its fourth and/or fifth claims and $905,242.00 in compensatory damages on its sixth, seventh, eighth, and/or ninth claims ("Non-Buy-Out Claims"). The jury further awarded Pinnacle $1,100,000 in punitive damages based on a finding that the Trust acted with an "evil mind."

Pinnacle now moves for an award of attorney fees, and the Trust moves to retax the costs awarded to Pinnacle by the Clerk of Court.

/ / /

# DISCUSSION

## I. Pinnacle's Fee Motion

### A. Legal Standard

"In an action involving state law claims, [federal courts] apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule." *MRO Commc'ns v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999). The forum in which this Court sits is California.

"California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." *Trope v. Katz*, 11 Cal. 4th 274, 279 (1995). Although, "where the parties have contractually obligated themselves to pay attorneys' fees," California Civil Code section 1717 governs. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001). Civil Code Section 1717 provides:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
>
> (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. . . . [T]he prevailing party on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

In deciding whether there is a "party prevailing on the contract," the trial court is "to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Hsu v. Abbara*, 9 Cal. 4th 863, 876 (1995). Thus, "a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives." *Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002) (applying *Hsu*). In essence, "courts should respect substance rather than

form, and to this extent should be guided by equitable considerations. For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." *Hsu*, 9 Cal. 4th at 877 (internal quotation marks omitted).

"The prevailing party determination is to be made only upon final resolution of the contract claims and only by a comparison of the extent to which each party has succeeded and failed to succeed in its contentions." *Id.* Indeed, even where a parties' underlying relationship was contractual in nature, the prevailing party is not entitled to attorney fees where the claim asserted sounds in tort (e.g., in an action for fraud seeking damages). *Super 7 Motel Assocs. v. Wang*, 16 Cal. App. 4th 541, 549 (1993). Section 1717 "'has consistently been held not to afford recovery of fees for tort claims arising out of or related to a . . . contract.'" *Loube v. Loube*, 64 Cal. App. 4th 421, 429 (1998) (quoting *Moallem v. Coldwell Banker Commercial Grp.*, 25 Cal. App. 4th 1827, 1830 (1994)). Still, a party may recover attorney fees on a tort claim where such a claim is within the scope of a contractual fee-shifting provision. *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698, 708 (1998).

**B.  Analysis**

Pinnacle argues it is entitled to recover all of its attorney fees pursuant to Section 20.17 of the MFC Operating Agreement, which provides in relevant part:

> In any controversy, claim or dispute arising out of, or relating to, this Agreement or the method and manner of performance thereof or the breach thereof, the prevailing party shall be entitled to and awarded, in addition to any other relief, a reasonable sum as litigation/arbitration expenses. . . . In determining what is a reasonable sum for litigation/arbitration expenses, attorneys' fees shall be included and the actual amount of attorneys' fees the party is obligated to its attorney or attorneys shall be presumed to be reasonable.

Arguing the "arising out of, or relating to" language should be read broadly, Pinnacle asserts all of its claim arise out of and relate to the Operating Agreement. Pinnacle further asserts it is the prevailing party because the jury found in Pinnacle's favor on both Pinnacle's claims and the Trust's counterclaims.

In opposition, the Trust asserts the Buy-out Agreement does not contain a fee-shifting provision, that Pinnacle did not prevail on its Operating Agreement claims, and that the Operating Agreement does not permit fee shifting on Pinnacle's tort claims.

In support of its position that Pinnacle is not entitled to attorney fees pursuant to its award of damages on its Buy-out Agreement claims, the Trust asserts it is undisputed that the Buy-out Agreement does not contain a fee shifting provision. Then, arguing that Pinnacle cannot use the Operating Agreement's fee-shifting provision to seek attorney fees pursuant to the damages it was awarded on its Buy-out Agreement claims, the Trust quotes the Court's May 8, 2013 order in which the Court stated:

> As an initial matter, the Court does not agree that the MFC Operating Agreement governs the Trust's buy-out of Pinnacle's interest in MFC. While the MFC Operating Agreement contains provisions for the assignment of a member's interest to another person or entity, it does not specifically contain provisions for one member to buy-out another member's interest in the company.

In support of its position that Pinnacle is not entitled to attorney fees pursuant to the jury's verdict in favor of Pinnacle on its Operating Agreement claims, the Trust notes that, throughout this litigation, Pinnacle sought $3.5 million in damages for its Operating Agreement claims but that Pinnacle was awarded $0 in damages on those claims.

In support of its position that Pinnacle is not entitled to attorney fees pursuant to its award of damages on its tort claims, the Trust asserts that, first, the Operating Agreement's two fee/expense provisions must be harmonized.[1] The Trust asserts that, once harmonized, only Section 20.11 provides for attorney fees. On this basis, the Trust asserts Pinnacle is not entitled to attorney fees based on its tort claims because

---

[1] In addition to Section 20.17, quoted in part above, Section 20.11 of the Operating Agreement provides in part:

> If any party brings an action or proceeding . . . against any other party by reason of a default by the other party or otherwise arising out of this Agreement, the non-prevailing party shall pay to the prevailing party in such action or proceeding all of the prevailing party's costs and expenses of suit . . . including reasonable attorneys' fees . . . .

the tort claims do not "aris[e] out of" the Operating Agreement as required by Section 20.11.

The Trust argues that, in any event, Pinnacle did not prevail on its tort claims because, throughout this litigation, Pinnacle sought $3.5 million in damages for its tort claims but was awarded only approximately $900,000 in compensatory damages.

In reply, Pinnacle asserts it is entitled to recover attorney fees associated with the Buy-out Agreement pursuant to the Operating Agreement's fee-shifting provision because the Buy-out Agreement arises out of, and relates to, the Operating Agreement. Pinnacle asserts that "[b]ut for the Operating Agreement, there would be no relationship between Pinnacle and the Trust and no indication of what interest Pinnacle held in MFC," and thus Pinnacle is entitled to recover its attorney fees under either Section 20.11 or Section 20.17 of the Operating Agreement. Pinnacle further asserts that the Trust has "argued fiercely that the Operating Agreement **governed** the Buy-Out Agreement." (Emphasis in original.)

Pinnacle argues that, even if the Court concludes the Buy-out claims did not "arise out of" the Operating Agreement, the Court should still award Pinnacle attorney fees because it prevailed on the Trust's counterclaims for breach of the Operating Agreement based on its defense that, because the parties had entered into the Buy-out Agreement, Pinnacle was no longer required to make capital contributions to MFC pursuant to the Operating Agreement.

Pinnacle further argues it was the prevailing party on its Buy-out Agreement claims because the jury awarded Pinnacle $1.6 million on those claims based on Pinnacle's closing argument that it was owed $1.2 million payment for Pinnacle's interest in MFC, along with approximately $400,000 of the bond money from Bryan Cave. Pinnacle similarly argues it was the prevailing party on the Trust's counterclaims for breach of the Operating Agreement because the jury found in Pinnacle's favor on those claims.

Regarding its tort claims, Pinnacle argues the Trust's interpretation of Sections

20.11 and 20.17 fails because the Trust has cited no authority requiring such an interpretation. Pinnacle further argues it was the prevailing party on those claims because the jury found unanimously in its favor, awarding Pinnacle both compensatory and punitive damages.

Having considered the parties' arguments, the Court will first address whether a basis exists for Pinnacle to recover attorney fees.

### 1. Basis for Attorney Fees

Pinnacle seeks attorney fees based on either of the Operating Agreement's fee-shifting provisions. Citing *Phillips v. Mercer*, 94 Nev. 279, 282 (1978), the Trust urges the Court to harmonize the two provisions because, as written, Section 20.17 renders Section 20.11 superfluous.

While California law governs whether attorney fees are available, the Operating Agreement explicitly states its interpretation is governed by Nevada law. Thus, the Court will interpret the Operating Agreement's fee-shifting provisions according to Nevada law.

In *Phillips*, the Nevada Supreme Court recognized that "[a] court should not interpret a contract so as to make meaningless its provisions." 94 Nev. at 282. Neither should a court modify or create a new or different contract. *Mohr Park Manor, Inc. v. Mohr*, 83 Nev. 107, 111 (1967). Instead, "a contract should be construed, if logically and legally permissible, so as to effectuate valid contractual relations, rather than in a manner which would render the agreement invalid, or render performance impossible." *Id.* Indeed, "[a] court should ascertain the intention of the parties from the language employed as applied to the subject matter in view of the surrounding circumstances." *Id.* Further, "[a] basic rule of contract interpretation is that 'every word must be given effect if at all possible.'" *Musser v. Bank of America*, 114 Nev. 945, 949 (1998).

Sections 20.11 and 20.17 are largely similar, differing mainly in the type of scenario that would permit a party to the Operating Agreement to recover attorney fees from another party to the agreement. Section 20.11 provides in pertinent part:

> **Attorneys' Fees**. If any party brings an action or proceeding . . . against any other party *by reason of default by the other party or otherwise arising out of this Agreement*, the non-prevailing party shall pay to the prevailing party in such action or proceeding all of the prevailing party's costs and expenses of suit . . . including reasonable attorneys' fees, which shall be payable whether or not such action is prosecuted to judgment.

(Emphasis added.)

Section 20.17 provides in relevant part:

> **Litigation/Arbitration Expenses**. In *any controversy, claim or dispute arising out of, or relating to, this Agreement or the method and manner of performance thereof or the breach thereof*, the prevailing party shall be entitled to and awarded, in addition to any other relief, a reasonable sum as litigation/arbitration expenses. If neither party wholly prevails, the party that substantially prevails shall be awarded a reasonable sum as litigation/arbitration expenses. In determining what is a reasonable sum for litigation/arbitration expenses, attorneys' fees shall be included and the actual amount of attorneys' fees that the party is obligated to pay its attorney or attorneys shall be presumed to be reasonable.

(Emphasis added.)

Considering these two provisions, the Court agrees with the Trust that the "any controversy, claim, or dispute arising out of, or relating to" language of Section 20.17 encompasses the "by reason of default or arising out of" language of Section 20.11. That is, an action arising per a default under the Operating Agreement would also be a controversy or dispute arising out of the Operating Agreement. Thus, plainly read, Section 20.17 renders Section 20.11 meaningless. The Court must thus attempt to give meaning to both provisions.

The Trust asserts that, "to give full harmony to all relevant provisions . . ., Section 20.11 must pertain specifically to attorneys' fees while Section 20.17 pertains to additional litigation expenses." The Trust asserts that, "[l]ikewise, the collateral reference to attorneys' fees in Section 20.17 can only logically be a benchmark for assessing the reasonableness of the other expenses permitted under that section."

In response, Pinnacle merely asserts that the Trust has provided no authority for its proposed interpretation. Pinnacle argues, "The mere fact that §20.17 expands the scope of §20.11 does not render §20.17 unenforceable."

While the Court agrees that Section 20.17's broad scope does not render it unenforceable, the Court must nonetheless interpret the Operating Agreement so as to

8

3:08-cv-1368-GPC-BGS

ensure Section 20.11 is not superfluous. That is, if the Court were to agree with Pinnacle's interpretation, then Section 20.17 would render Section 20.11 superfluous, which is forbidden by Nevada's rules of contract interpretation.

Considering the oddity of including both provisions, the Court finds the Trust's interpretation to be a reasonable one. That is, the Court finds a reasonable interpretation of the two sections is that Section 20.11 provides for attorney fees (in an action brought by reason of default or otherwise arising out of the Operating Agreement) and that Section 20.17 provides for other litigation/arbitration expenses (in any controversy, claim, or dispute arising out of, or relating to, the Operating Agreement). Section 20.17's reference to attorney fees states: "In ***determining*** what is a reasonable sum for litigation/arbitration expenses, attorneys' fees shall be included and the actual amount of attorneys' fees the party is obligated to pay its attorney or attorneys shall be presumed to be reasonable." (Emphasis added.) Thus, as the Trust suggests, the collateral reference to attorneys' fees can only logically be a method for "***determining*** what is a reasonable sum for litigation/arbitration expenses." (Emphasis added.) Such an interpretation is necessary to give Section 20.11 effect.

Moreover, the Court cannot envision, from an objective perspective, why the parties would subject themselves to the vast potential liability of being subject to a provision that provides for attorney fees in ***any*** controversy, claim, or dispute ***relating to*** the Operating Agreement. A more reasonable interpretation is that the parties' intended to limit their liability for attorney fees to disputes arising "by reason of default by the other party or otherwise arising out of" the Operating Agreement. The Court will thus determine the scope of attorney fees available to Pinnacle under Section 20.11 of the Operating Agreement.

### 2. Scope of Section 20.11

Citing *Dobron v. Bunch*, 125 Nev. 460 (2009), and *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914 (9th Cir. 2011), the Trust asserts that the "arising out of" language in Section 20.11 must be narrowly interpreted to mean only contract claims.

The Trust thus argues Pinnacle cannot recover its fees incurred in prosecuting its tort and Buy-out Agreement claims because those claims do not arise out of the Operating Agreement.

Pinnacle argues in response that *Dobron* is distinguishable because the attorney fee language at issue there did not contain an interpretation of the phrase "arising out of" and did not include a discussion of the interplay between contract and tort claims. Pinnacle further asserts the Court should not rely on *Cape Flattery* because it is not based on Nevada law.

Pinnacle argues that, even if the Court were to find that Pinnacle's tort and Buy-out Agreement claims do not fall within Section 20.11, Pinnacle prevailed on the Trust's counterclaims for breach of the Operating Agreement. Pinnacle thus asserts it is entitled to fees incurred in prosecuting its Buy-out Agreement claims because Pinnacle's defense to the Trust's counterclaims was based on the existence of the Buy-out Agreement. Pinnacle asserts it is entitled to fees incurred in prosecuting its tort claims because the proof submitted in connection with those claims "is the same as that submitted in connection with its defense against the Trust's counterclaims."

In *Dobron*, the Nevada Supreme Court addressed whether the defense of a usury action fell within a contractual provision which provided for attorney fees incurred "in collecting or compromising" a loan. 125 Nev. at 464. Applying the rule that, "'[w]here a contract provision purports to allow attorney's fees in an action arising out of the terms of the instrument, [the court] will not construe the provision to have broader application,'" (quoting *Campbell v. Nocilla*, 101 Nev. 9, 12 (1985)), the Nevada Supreme Court concluded that the "defense of the usury action did not fall within the attorney fees provision of the [] agreement because it was not an action to collect or compromise the loan." *Id.* at 465. Citing several federal cases, the court recognized that attorney fee provisions should be narrowly construed. *Id.* at 466.

Thus, construing the "arising out of" language of Section 20.11 narrowly, the Court agrees with the Trust's interpretation that Section 20.11 provides for attorney

fees only where performance under the Operating Agreement is at issue. On that basis, the Court finds that Pinnacle is not entitled to attorney fees incurred in prosecuting its Buy-out Agreement or tort claims. The Court, however, recognizes the overlap between the prosecution of Pinnacle's own claims and Pinnacle's defense against the Trust's counterclaims.

It is undisputed that Pinnacle was the prevailing party on the Trust's counterclaims under the Operating Agreement, as the jury found in Pinnacle's favor on the Trust's counterclaims. Thus, the Court is prepared to award Pinnacle the attorney fees it incurred in connection with defending against the Trust's counterclaims.

The Court is not, however, convinced that Pinnacle's tort claims arise out of the Operating Agreement. Pinnacle prosecuted its tort claims under the theory that the Trust never intended to honor its obligations under the Operating Agreement and that its actions were part of a fraudulent scheme to take over the gyms. Further, the Court finds the proof relied on to establish the existence of the Buy-out Agreement and to establish the Trust's fraudulent conduct does not overlap as much as Pinnacle asserts. Thus, the Court must decide whether to deduct a portion of Pinnacle's requested fees to reflect the fact that Pinnacle is not entitled to attorney fees incurred in prosecuting its tort claims.

### 3. Apportionment of Fees

A party may be awarded attorney fees under Civil Code Section 1717 only for fees incurred in connection with the contract that provides for the recovery of fees. *See Loube*, 64 Cal. App. 4th at 430-31 (remanding matter so the trial court can apportion award of attorney fees available under Section 1717) (citing *Reynolds Metal Co. v. Alperson*, 25 Cal. 3d 124, 129 (1979)).

Because the Court has concluded that Pinnacle may not be awarded fees incurred in prosecuting its tort claims, the Court must therefore apportion the amount Pinnacle is entitled to in defending against the Trust's counterclaims, which, as discussed above, includes the fees incurred in establishing the existence of the Buy-out Agreement.

Given that the case was essentially divided into three parts (i.e., Buy-out Agreement claims, Operating Agreement claims, and tort claims), and based on the Court's observations at trial and a review of the record, the Court finds that approximately one-third of Pinnacle's efforts were devoted to its defense against the Trust's counterclaims. Accordingly, the Court finds it appropriate to apportion one-third (33%) of Pinnacle's fees as recoverable under Section 20.11 of the Operating Agreement. The Court must next decide whether Pinnacle's requested fees are reasonable.

### 4. Reasonableness of Fees

Pinnacle asserts its attorney fees are presumptively reasonable under Section 20.17 of the Operating Agreement, which provides that the actual amount of attorneys' fees that a party is obligated to pay its attorney or attorneys is presumed to be reasonable. Pinnacle asserts that, even without this presumption, its fees and costs are reasonable.

In opposition, the Trust argues Pinnacle's claimed attorney fees and costs are unreasonable. The Trust, however, notes only two instances of what it considers are unreasonable fees. The first relates to fees incurred in connection with Pinnacle's claims against dismissed parties Deer Valley and Carefree Capital. The second relates to the fact that Pinnacle's counsel has represented Pinnacle in cases other than this one and the fact that the records submitted by Pinnacle's counsel are vague as to whether fees were incurred in connection with this or another case in which counsel represented Pinnacle.

In reply, Pinnacle asserts it is entitled to the full amount of its fees and costs. With regard to actions specific to Deer Valley and Carefree, Pinnacle asserts "[t]he only actions specific to Deer Valley and Carefree were those taken in connection with the motions to dismiss filed by these parties." Pinnacle further asserts that all work done on behalf of Pinnacle was billed separately for each case and that all of the billing records submitted in support of its Fee Motion relate to this case only and that any time associated with any other case was removed. In its later reply filed in support of its

supplemental exhibits, Pinnacle agreed to exclude from its request for attorney fees any actions specific to Deer Valley and Carefree.

The Court finds Pinnacle's willingness to dispense with its requested fees incurred in relation to dismissed defendants Deer Valley and Carefree renders the Trust's argument on this point moot. Further, after reviewing Pinnacle's billing entries, the Court is satisfied that Pinnacle has submitted requests for fees related only to this case, and not related to other matters in which counsel may have represented Pinnacle. The Court notes that the Trust has not objected to the costs Pinnacle seeks in its Fee Motion.

Pinnacle has requested a total of $1,198,322.14 in attorney fees and $104,184.45 in costs. Pinnacle has withdrawn its request for $42,262.80 in attorney fees for work done in connection with Deer Valley and Carefree, resulting in a total request of $1,156,059.34 in attorney fees. The Court will thus apportion one-third of the reduced fees as properly awarded under California Civil Code Section 1717 as discussed above, for a total award of $381,499.58 in attorney fees. For the same reason, the Court finds it appropriate to apportion one-third of Pinnacle's requested costs, resulting in a total award of $34,380.87 in costs.

**II.     The Trust's Motion to Retax**

On April 25, 2013, the Clerk of Court considered Pinnacle's Bill of Costs pursuant to Federal Rule of Civil Procedure 54(d) and Civil Local Rule 54.1 and entered an order approving Pinnacle's Bill of Costs in its entirety for the amount of $29,596.37.

Relying primarily on *Champion Produce Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016 (9th Cir. 2003), the Trust argues the Court should either vacate or reduce the award of costs "given the vast disparity in the amount of damages Pinnacle sought on its claims versus the damages Pinnacle was actually awarded at trial."

In response, Pinnacle notes that the Trust does not assert that Pinnacle's costs are inappropriate or impermissible under Rule 54(d). Pinnacle then asserts that, under

Rule 54, "the prevailing party is presumed to be entitled to costs and that a court may only deviate from that presumption if the case is not "ordinary" and awarding costs would be 'inappropriate' or 'inequitable.'" Pinnacle further asserts that the Trust's reliance on *Champion* is misplaced because the Ninth Circuit's holding there was limited to exclusively contract cases.

"Rule 54(d)(1) creates a presumption in favor of awarding costs to a prevailing party, but the district court may refuse to award costs within its discretion." *Champion*, 342 F.3d at 1022. In *Champion*, the Ninth Circuit held that, in a contract action, a district court may deny costs where there is a disparity between the amount of damages sought and the amount of damages actually recovered. 342 F.3d at 1023. As Pinnacle notes, however, the Ninth Circuit cautioned that its "approval of [this] reason is limited to contract actions, in which damages are often more readily calculable than, for example, in tort actions." *Id.*

Here, the Court finds no reason to vacate or reduce Pinnacle's award of costs. The Court finds that awards of $1.2 million on Pinnacle's Buy-out Agreement claims and over $2 million on its tort claims to be significant victories. Any disparity between the damages Pinnacle sought and the damages it was awarded is not substantial enough to require a reduction of Pinnacle's award of costs. Moreover, Pinnacle's success was not limited to its contract claims, but extended also to its tort claims, rendering *Champion* inapposite. Accordingly, the Court will deny the Trust's Motion to Retax.

## CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Pinnacle's Fee Motion, (ECF No. 322), is **GRANTED IN PART** and **DENIED IN PART**;
2. Pinnacle is awarded $381,499.58 in attorney fees and $34,380.87 in costs;
3. The Trust's Motion to Retax, (ECF No. 335), is **DENIED**; and

///

4. The hearing on Pinnacle's Fee Motion and the Trust's Motion to Retax, currently set for July 19, 2013, is **VACATED**.

DATED: July 17, 2013

HON. GONZALO P. CURIEL
United States District Judge